# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

FILED

MAY 1 5 2017

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___DG___ DEP CLK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE PREMISES LOCATED AT 8901 ST. IVES PLACE, WILMINGTION, NORTH CAROLINA 28411; AND THE PERSON OF BUFFY ANN FRANK

Case No. 7:17-mj-1143-RJ

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Eastern___ District of ___North Carolina___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                    *Offense Description*

The application is based on these facts:

See Attached Affidavit of Michelle L. Rankin

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michelle L. Rankin, FBI Special Agent
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the applicant appeared before me via reliable electronic means, was placed under oath and attested to the contents of this Application for Search Warrant.

Date/Time: May 15, 2017 4:44 pm

City & State: Wilmington, North Carolina

Robert B. Jones Jr., United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Southern Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 8901 ST. IVES PLACE, WILMINGTION, NORTH CAROLINA 28411; AND THE PERSON OF BUFFY ANN FRANK | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Michelle L. Rankin, being duly sworn, hereby depose and state under oath that the following is true:

### AFFIANT'S EXPERIENCE

1.  I am a Special Agent employed by the Federal Bureau of Investigation (FBI). I have been so employed since 1999. Since 2010, I have been assigned to the Asset Forfeiture/ Money Laundering Squad in the FBI's Washington, D.C., Field Office (Northern Virginia Resident Agency). My investigative assignments include investigating the asset forfeiture aspects of suspected violations of numerous federal statutes including but not limited to: federal anti-money laundering statutes (18 U.S.C. § 1956 and 1957), distribution of controlled substances (21 U.S.C. § 841), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and health care fraud (18 U.S.C. § 1347) violations. I have received training in Advanced Money Laundering Techniques and Complex Financial Manipulation.

2.  The information contained in this affidavit is based, in part, on my personal knowledge and observations during the course of this investigation, as well as information provided to me by other law enforcement agents, and is based on a review of various documents

and records. Additionally, this affidavit is based upon my training and experience as well as that of other law enforcement agents working with me in this investigation. The dates listed in the affidavit should be read as "on or about" dates. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of the information about which I, or collectively the other agents involved in this investigation, have knowledge.

3. This affidavit is in support of a search warrant for the property located at **8901 St. Ives Place, Wilmington, North Carolina**; and the person of **Buffy Ann Frank** (SUBJECT PREMISES) in order to effect the seizure of the following vehicles and items:

1. 2016 BMW X1 28XI with VIN: WBXHT3C35G5E49453, registered to Buffy Ann Frank, and any and all associated keys or access devices;

2. 2013 Porsche 911 Carrera with VIN: WP0AB2A96DS121567, registered to Buffy Ann Frank and Jon Lawrence Frank, and any and all associated keys or access devices.

3. 2014 Chrysler Town & Country wagon with VIN 2C4RC1GG0ER133104, registered to Buffy Ann Frank, and any and all associated keys or access devices

4. There is probable cause to believe the above-referenced assets are directly traceable to violations of 18 USC §1343 (Wire Fraud) and are therefore subject to civil and criminal seizure and forfeiture pursuant to 18 USC 981(a)(1)(C) and 26 USC §2461(c).

## OVERVIEW OF THE INVESTIGATION

5. Since in or around January 2017, the FBI Washington Field Office, has been investigating allegations that Jon Lawrence Frank (J FRANK), devised and intended to devise a scheme to defraud NCI Information Systems, Inc (NCI), a firm providing information technology

and professional services to U.S. Government agents, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals and sounds in violation of Title 18, USC §1343 (wire fraud).

6. The investigation has revealed that J FRANK, using his position as Controller of NCI, as well as his detailed knowledge of its systems and operations, systematically directed over $19 million in fraudulent payments from NCI's payroll account to his own personal financial accounts. Using his position at the company, J FRANK was able to personally authorize the fraudulent payments by directing that they be made from accounts he controlled, and from accounts that would not require him to secure any additional approvals. J FRANK also took affirmative steps to conceal the fraudulent transfers to avoid detection. J FRANK falsified documentation, including bank account statements, to make the transactions appear legitimate and circumvent the company's controls. The falsified documents were intended to mislead the company and its employees and agents into incorrectly believing that the payments were made to an NCI vendor to pay employee health benefit expenses, rather than for J FRANK's own personal enrichment.

## PROBABLE CAUSE

7. JON LAWRENCE FRANK (J FRANK), 47 years old, who is known to reside in Nokesville, Virginia, was Vice President and Controller for NCI Inc., an information technology and staffing services firm in Reston, Virginia. J FRANK was employed by the company from March 2000 until January 2017. As the Controller, J FRANK had access to the company's financial statements, general ledger, payroll, and bank accounts.

Page 3 of 15

Case 7:17-mj-01143-RJ Document 1 Filed 05/15/17 Page 4 of 18

8. In late 2016, NCI uncovered a discrepancy in its financial records. In the wake of that finding, NCI commenced an internal review to ascertain the source of the discrepancy. According to a representative for NCI, by the review's conclusion, it had uncovered account statements, e-mails, and other documentary evidence demonstrating that the discrepancy had resulted from a series of improper payments that had been approved by J FRANK, and that were directed to a bank accounts bearing his name. NCI's representatives met with J FRANK and his attorney and discussed his actions which had caused the transfer of fraudulent payments to his personal bank account. During the meeting, J FRANK admitted that he had used his position at NCI to make unsubstantiated payments from its payroll account into his personal checking account of approximately $11 million over a period of multiple years, and that the majority of the stolen funds had been obtained by him in the preceding two to three years.

9. In January 2017, Special Agents of the FBI interviewed a witness who attended the meeting with NCI Inc.'s representatives and J FRANK. During the meeting, the witness heard J FRANK acknowledge he had been making unauthorized payroll transfers into his personal accounts for about ten years, and had used those funds to purchase real properties and vehicles. Also during the meeting, J FRANK explained that he originally used his BB&T account but then switched to a PNC account and estimated he had transferred $11 million over those years. In addition, the witness heard J FRANK describe the mechanics of his scheme to defraud the company.

10. To facilitate the embezzlement, J FRANK prepared fraudulent payment requests using a template he obtained from an NCI vendor to create the false appearance that the improper bank transfers were legitimate payments. The vendor sent payment requests to NCI using a secure email system and J FRANK fraudulently recreated email payment requests that appeared to be

JMK

sent from that system. J FRANK also altered certain bank account statements using Adobe software to disguise his fraudulent payments.

11. As Controller of the Company, J FRANK had access to NCI's payroll system. J FRANK used this access to direct NCI's bank, which maintained NCI's payroll account, to carry out transfers of NCI funds in the amounts and to the accounts specified by J FRANK in the falsified reimbursement e-mail requests.

12. A witness who attended the meeting between J FRANK and NCI representatives heard J FRANK explain how he used NCI's legacy payroll system for these fraudulent transfers which J FRANK accessed by calling SunTrust Bank to initiate the transfer of funds to his PNC Bank account. J FRANK described the legacy payroll system as a back up to the current main system if it was down for some reason and to make payments to certain employees. In addition to calling the bank to effectuate the transfer of funds from NCI's SunTrust Account to his personal bank account, J FRANK accessed NCI's SunTrust Bank payroll account statements online, downloaded the statements to his office computer, and altered them using Adobe software to obscure the true transactions to make it appear consistent with payments to the vendor. He then caused the altered bank statements to be entered into NCI's general ledger. When auditors questioned J FRANK about the transactions, he referred them to the altered documents. Taken together, statements by J FRANK, witness interviews, and documents provided by NCI indicate J FRANK conducted each of these actions at the NCI offices in Reston, Virginia.

13. Further, during the meeting with J FRANK and NCI's representatives the witness heard J FRANK offer to return some of the money to NCI Inc. by liquidating his assets which he believed would raise $7.5 million.

14. I have reviewed NCI's Sun Trust Bank records that were provided to J FRANK during his meeting with NCI representatives. During the meeting, J FRANK reviewed records associated with two transactions and confirmed the records were part of his scheme to defraud NCI Inc. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $351,264.15, on October 3, 2016, from NCI's Sun Trust main payroll account xx7646 to his personal PNC Bank Account xx7539. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $359,997.32, on January 15, 2016, from NCI's Sun Trust xx7646 to his personal PNC xx7539. A Sun Trust Bank employee explained to investigating agents that the server location for such transactions is located in Georgia. A PNC Bank employee was contacted and advised that the mainframe associated with these transactions was located in Virginia, thereby causing the transfer of funds from NCI's account into his personal account by means of wire communication in interstate commerce.

## INCOME AND FINANCIAL TRACING

15. Your affiant has reviewed account records associated with J FRANK and his wife, Buffy Ann Frank (B FRANK). Based on a review of records provided by NCI and review of the J FRANK's financial accounts from January 2010 through January or February 2017, your affiant has identified over $19.4 million in fraudulent proceeds that were deposited directly into three accounts held by J FRANK and/or joint accounts with B FRANK. The fraudulent funds represent the overwhelming majority of deposits into their accounts. A portion of the fraudulent proceeds were moved between multiple other accounts held by the FRANK's, and/or used to purchase multiple real properties, multiple luxury automobiles which were traded-in for newer models on a regular basis, and luxury personal items.

16. According to NCI, J FRANK received an annual salary of approximately $180,000 to $200,000, and typically received annual bonuses of approximately $40,000. Based on a review of bank records, J FRANK received salary deposits of approximately $4,665 (2010) increasing to approximately $5,500 (2016) per pay cycle which averaged two payments per month. J FRANK also appears to have received deposits of expense reimbursements (totaling $44,990) and bonuses.

17. B FRANK's sole source of legitimate income was approximately $1,500 per month of social security disability. On a loan application signed by B FRANK in June 2016, in conjunction with the purchase of her current residence, she listed her employment from October 2000 to December 2015 as "housewife," and for the previous eight months as self-employed at Crescent Moon at 24 North Front LLC (Crescent). Under the income portion of the application, B FRANK lists her income as $4,680 per month from alimony/child support and $1,514 per month from Social Security/Disability. She also claimed rental income of $1,875 per month from the condominium located at 24652 Byrne Meadow Square. The review conducted of her bank records showed her disability and rental income consistent with her loan application. As explained in further detail below, both the alimony payments and rental income from real property are sourced from fraudulent proceeds, and the amount of proceeds deposited into accounts held by B FRANK far exceeds alimony/child support payments claimed in her loan application.

18. J FRANK and B FRANK have been legally separated since 2013. J FRANK resides in Nokesville, Virginia; and B FRANK currently resides at the SUBJECT PREMISES. J FRANK continues to financially support B FRANK by depositing or transferring fraudulent proceeds into accounts under the control of B FRANK. Some of these transfers (primarily checks) have included notations in the memo section of the check referencing 'alimony' payments.

Page 7 of 15

Case 7:17-mj-01143-RJ Document 1 Filed 05/15/17 Page 8 of 18

## TRACING OF FRAUD PROCEEDS FROM NCI

19. Your affiant has reviewed financial records from NCI, and financial accounts associated with J FRANK for the period January 2010 through January 2017. This review has revealed over $19.4 million spread over 136 deposits into J FRANK's personal accounts that cannot be accounted for as salary, bonuses, or reimbursement expenses. Based on an interview with NCI's Chief Financial Officer, your affiant confirmed that these deposits are fraudulent proceeds of the above-noted scheme to defraud. The records reviewed showed these fraudulent funds from NCI's account were deposited into three different accounts held solely or jointly by J FRANK and/or B FRANK, which included: BB&T xx9899, BB&T 2514 and PNC xx7539. These accounts are further described in detail below.

20. Beginning in 2010, the number of fraudulent deposits into J FRANK's personal account averaged two to three deposits per month. The average amount of each deposit was approximately $29,674. By 2016, the frequency of the deposits into his personal account had decreased, however the average amount of each transaction had increased significantly to approximately $288,655 per deposit. Below is a chart summarizing the total amount of fraudulent proceeds deposited into J FRANK's accounts from 2010 through 2016:

| Year | Total fraud deposits | Deposit account(s) |
|---|---|---|
| 2010 | $ 1,038,614.41 | BB&T xx9899, BB&T xx2514 |
| 2011 | $ 2,074,017.17 | BB&T xx9899, BB&T xx2514 |
| 2012 | $ 2,256,624.33 | BB&T xx9899 |
| 2013 | $ 2,273,044.38 | BB&T xx9899, PNC xx7539 |
| 2014 | $ 3,284,944.93 | BB&T xx9899, PNC xx7539 |
| 2015 | $ 3,238,181.43 | BB&T xx9899, PNC xx7539 |
| 2016 | $ 5,286,922.74 | PNC XX7539 |
| Total: | $ 19,452,349.39 | |

### BB&T xx9899

21. BB&T xx9899 is a joint checking account that was opened on October 17, 1994, as account number xx4113. With a bank merger, the account was converted to BB&T account xx9899 on October 11, 2003. The signatories on the account were listed as Jon L. Frank and Buffy Ann Frank. According to BB&T, this account was closed in approximately February, 2017, and the remaining funds were transferred to BB&T xx7801. A review of BB&T xx9899 was conducted for the period January 6, 2010, through January 9, 2017. At the beginning of the review period, the balance on the account was $116,772.73.

22. This account appears to have been used as the primary checking account for the FRANKS until their legal separation in 2013, and directly received fraudulent proceeds from NCI. The fraudulent proceeds were directly deposited into this account until approximately October 2010, when the proceeds were briefly redirected into BB&T xx2514. Beginning in approximately July 2011, the fraud proceeds resumed being deposited into BB&Txx9899 until approximately August 2013. After August 2013, further proceeds of the fraud scheme were then deposited into J FRANK's new account (PNC xx7539).

23. Although the direct deposit of proceeds into BB&T xx9899 lapsed for ten months in 2010/2011, and transitioned to PNC xx7539, BB&T xx9899 continued to receive deposits of proceeds from these two accounts throughout the review period.

24. Over the approximate seven year review period, all deposits into this account totaled $10,483,376.98. This total includes J FRANK's salary and expenses totaling $647,639.80; social security disability income for B FRANK totaling $79,933.00; and $6,103,067.36 in fraudulent proceeds deposited directly from NCI's account. Many of the proceeds deposited into this account were transferred into other accounts held by the FRANKS, and/or used to purchase a variety of items including the purchase or construction of real property, purchase of luxury vehicles

and customizations, purchase of luxury personal items, and significant credit card payments (over $2.6 million from this account during the review period).

25. Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above. In summation, at least $8,716,301.82 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 83% of all deposits into this account. Purported legitimate salaries and expenses for J FRANK and B FRANK totaled $727,572.80, and represented only 7% of the total deposits into this account.

26. This account funded the purchase of a 2013 Porsche Carrera and the 2011 Porsche 911 used as a trade in for the 2013 Porsche Carrera as described in more detail below.

### * 2013 PORSCHE 911 CARRERA, VIN WP0AB2A96DS121567

27. According to records obtained from the Virginia Department of Motor Vehicles, this 2013 Porsche 911 Carrera was purchased on or about January 12, 2013. The registered owners of this vehicle are listed as Buffy Ann Frank and Jon Lawrence Frank. It was purchased from HBL Porsche of Tysons Corner (HBL) for the sales price of $168,637.04. Records obtained from HBL revealed that this purchase was made with a trade-in of a 2011 Porsche 911, and check number 7302, dated January 12, 2013, in the amount of $77,634.04, from BB&T xx9899, payable to Porsche Tysons, and signed by B FRANK. On the memo section of the check was handwritten, "my Porsche [smiley face emoji]."

28. The sales documentation identified the trade-in vehicle as a 2011 Porsche 911, VIN: WP0AB2A96BS720062. According to records obtained from the Virginia Department of Motor

Vehicles, this vehicle was purchased by J FRANK on June 24, 2010, from HBL. Bank records reviewed in this case show that also on June 24, 2010, J FRANK wrote and tendered check number 6630 in the amount of $119,246.68, from BB&T xx9899, to HBL. On the memo section of the check was handwritten, "911 4S."

29. A Separation and Property Settlement Agreement was signed by J FRANK and B FRANK on October 3, 2013, and October 2, 2013 respectively. This agreement was filed with the deed for B FRANK's current residence on St. Ives Place. In the portion of the agreement outlining the division of assets, the agreement stated, "the 2013 Porsche 911, which is currently titled jointly in the Parties' names, and not encumbered by any debt, shall be the Wife's sold and separate property." As noted earlier in this affidavit, BB&T xx9899, which funded both of the above vehicle purchases, was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking to seize this vehicle.

### BB&T xx7801

30. BB&T xx7801 is a "Bright Banking" checking account that was opened on September 26, 2013. The sole signatory on the account is Buffy Ann Frank. As this account was opened during the review period, the account balance began at zero. According to BB&T, as of April 27, 2017, this account had a balance of approximately $46,000. This account appears to be the primary checking account used by B FRANK after her legal separation from J FRANK in 2013. This account received indirect proceeds from the above fraud scheme through accounts that received direct and/or indirect proceeds of the same scheme, and rental income from properties purchased with fraud proceeds. A review of this account was conducted for the period September 26, 2013, through January 18, 2017.

31. Many of the proceeds deposited into this account were transferred into other accounts held by B FRANK or her businesses, and/or used to purchase a variety of items including the purchase and/or construction of real property, mortgage payments on her current residence, purchase of an/or transfers into her businesses Crescent Moon and Logistic Glamour, purchase of vehicles, purchase of art and personal items, and significant credit card payments (over $503,000 from this account during the review period). Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above.

32. Over the approximate three year four month review period, all deposits into this account totaled $2,011,273.76. Of those deposits, a total of $73,270 in social security disability was deposited into this account and represents only 4% of the total deposits into this account. Indirect proceeds deposited into this account include checks and transfers from BB&T xx9899, BB&T xx2514, and PNC xx7539 all of which, as noted above, were primarily funded from fraudulent proceeds. This account was also funded from BB&T xx0037 and BB&T xx5023 which, were also primarily funded with fraud proceeds. In addition, this account received $70,115 in rental income from a property purchased with fraudulent proceeds.

33. In summation, at least $1,911,341.33 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 95% of all deposits into this account. This account funded the purchase of a 2016 BMW X1 and 2014 Chrysler Town & Country Wagon as described in more detail below.

### * 2016 BMW X1 28XI, VIN WBXHT3C35G5E49453

34.     According to records obtained from the North Carolina Department of Motor vehicles, this 2016 BMW X1 was purchased on or about March 26, 2016. The registered owner of this vehicle is Buffy Ann Frank at 712 Grey Squirrel Drive, Wilmington, North Carolina. Your affiant knows this address to be B FRANK's previous address before the purchase of her current residence in June 2016. It was purchased from BMW of Wilmington with a total purchase price of $53,386.79. Records obtained from BB&T show that this vehicle was purchased with check number 1124 from BB&T xx7801, payable to BMW of Wilmington, in the amount of $53,386.79. The memo section of the check bore a handwritten notation of "New Car for My Birthday."

35.     As noted earlier in this affidavit, BB&T xx7801, which funded the above vehicle purchase, was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking to seize this vehicle.

### 2014 Chrysler Town & Country Wagon

36.     According to records obtained from the Virginia Department of Motor Vehicles, this Town & Country van was purchase on or about April 6, 2014, from Fair Oaks Chrysler Jeep Dodge in Chantilly, Virginia. The registered owner of this vehicle is Buffy Ann Frank, and the sale price is listed as $40,765. This vehicle was assigned Virginia license plate number WLV7844. A review of B FRANK's financial revealed check number 1004, written from BB&T xx7801, payable to Fair Oaks Motors in the amount of $47,028.78. Handwritten in the memo section of the check was "Chrysler T&C for me." The check was dated April 6, 2013, however the check cleared B FRANKs account on April 11, 2014. Your affiant believes the check as inadvertently dated for the prior year based on the purchase day/month on both the

check and DMV records, and cleared date from the bank. The back of the check was endorsed as follows, "...for deposit only Fair Oaks Motors, Inc T/A Fair Oaks Chrysler Jeep Dodge."

37.     This vehicle was observed in the driveway of the SUBJECT PREMISES, on the afternoon of May 11, 2017. As noted earlier in this affidavit, PNC xx7801 was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking to seize this vehicle.

## SUBJECT PREMISES

38.     The SUBJECT PREMISES consists of a single family residence located in New Hanover County, North Carolina. This property was purchased by B FRANK on June 23, 2016, as her primary residence. Located on the property and attached to her residence are two (2) two-bay garages.

39.     As this is the current residence of B FRANK, considering that there appears to be sufficient space to store the two automobiles described above and believed to be possession of B FRANK, and inasmuch as the keys to these vehicles could be found anywhere on the property and/or on the person of B FRANK, your affiant is therefore seeking a warrant for this property and the person of B FRANK.

## CONCLUSION

40.     Based on the information contained in this affidavit, there is probable cause to believe that the Subject Property constitutes or was derived from proceeds traceable to the wire fraud scheme and is therefore subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984); and subject to criminal forfeiture pursuant to 28 U.S.C. § 2461(c).

41. Based on the information contained in this affidavit, there is also probable cause to believe that these vehicles are located on the SUBJECT PREMISES. Therefore a search warrant is being sought to effect the seizure of these vehicles.

42. Thus, your affiant respectfully requests that the Court issue a search warrant for the premises known and described at 8901 St. Ives Place, Wilmington, North Carolina to locate the vehicles and the person of Buffy Ann Frank for any and all associated keys or access devices.

Michelle L. Rankin, Special Agent
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath and attested to the contents of this Affidavit.

Date/Time: May 15, 2017 4:43 pm

City & State: Wilmington, North Carolina

Robert B. Jones Jr., United States Magistrate Judge

## ATTACHMENT A

*PERSONS AND/OR PROPERTY TO BE SEARCHED*

The PERSON of **BUFFY ANN FRANK**

The SUBJECT PREMISES is known and described as 8901 St. Ives Place, Wilmington, North Carolina. This is a two level single family residence with two attached garages. The house has brick construction with maroon colored entrance doors, front shutters, and four garage doors. The numbers "8901" appear on the mailbox in front of the residence.

The following is a photograph of the subject premises:



JMK

## ATTACHMENT B

*PROPERTY TO BE SEIZED*

1. 2016 BMW X1 28XI with VIN: WBXHT3C35G5E49453, registered to Buffy Ann Frank, and any and all associated keys or access devices;

2. 2013 Porsche Carrera with VIN: WP0AB2A96DS121567, registered to Buffy Ann Frank and Jon Lawrence Frank, and any and all associated keys or access devices;

3. 2014 Chrysler Town & Country with VIN: 2C4RC1GG0ER133104, registered to Buffy Ann Frank, and any and all associated keys and access devices.